United States District Court
Northern District of California

1

2

3

4

5

6

7

8           UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10

11    DAVID A. NWAONUMAH,                    Case No. 15-cv-04196-WHO (PR)

              Petitioner,

12

              v.                             **ORDER DENYING PETITION FOR**
13                                           **WRIT OF HABEAS CORPUS**

14    M. E. SPEARMAN,

              Respondent.
15

16

17                          **INTRODUCTION**

18          Petitioner David Nwaonumah seeks federal habeas relief under 28 U.S.C. § 2254

19    from a 2013 prison disciplinary decision that resulted in a 30 day forfeiture of credits.  Due

20    process requires that a prison disciplinary decision meet the "some evidence" standard of

21    *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  Because the prison's decision meets this

22    low bar, the petition is DENIED.

23                          **BACKGROUND**

24          In 2013, Nwaonumah's jailors at Soledad State Prison found him guilty on a charge

25    of refusing to follow a direct order to move from a lower bunk to the top bunk.  (Pet. at 5.)

26    According to the prison's record of the disciplinary hearing, prison guard C. Betancourt

27    testified that on November 6, 2013, he noticed that Nwaonumah was occupying the lower

28    bunk in his cell.  (Ans., Dkt. No. 31 (Rules Violation Report) at 26.)  Because the lower

1    bunk had been assigned to petitioner's cellmate pursuant to a medical chrono, Betancourt

2    asked Nwaonumah why he wasn't using the upper bunk. (*Id.*) Petitioner said he didn't

3    want to move "because he had talked to a nurse about getting a lower bunk chrono." (*Id.*)

4    Betancourt then ordered petitioner to move his property to the upper bunk. (*Id.*)

5    Nwaonumah refused, and Betancourt again ordered petitioner to comply. (*Id.*)

6    Nwaonumah again refused, saying, "Hell no, I'm not moving." (*Id.*) Betancourt later

7    looked into whether petitioner had any lower bunk chronos, but he found none on file.

8    (*Id.*) Petitioner was charged with refusing a direct order to move.

9          At the hearing, Nwaonumah testified that he too had a lower bunk chrono and that

10   he had told Betancourt so. (*Id.*) He further testified that he did not show the chrono to

11   Betancourt, nor did Betancourt ask to see it. (*Id.*)

12         Nwaonumah was found guilty of refusing a direct order to move and was assessed a

13   30-day forfeiture of credits. The hearing officer believed Betancourt's testimony and

14   rejected petitioner's assertion that he had a lower bunk chrono. "Years of experience have

15   demonstrated that if an inmate has documentation in his possession to support their belief

16   or claims they always attempt to show it to staff to solidify their position." (*Id.* at 28.)

17         Nwaonumah sought but was denied relief on state judicial review.

18         In his federal habeas petition, Nwaonumah claims that the preponderance standard,

19   rather than under the "some evidence" standard, should apply.

**DISCUSSION**

21         The "some evidence" standard of *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)

22   poses a light evidentiary burden. *See also Bruce v. Ylst*, 351 F.3d 1283, 1287-1288 (9th

23   Cir. 2003). "[T]he relevant question is whether there is any evidence in the record that

24   could support the conclusion reached." *Hill*, 472 U.S. at 455-457 (upholding the

25   revocation of good time credits, even though the evidence "might be characterized as

26   meager," because "the record is not so devoid of evidence that the findings of the

27   disciplinary board were without support or otherwise arbitrary.").

28         Habeas relief is not warranted because there was some evidence in the record to

2

1   support the prison's decision that petitioner was guilty of refusing to follow orders.

2   Betancourt testified that Nwaonumah twice refused his instructions to move to the upper

3   bunk. This certainly meets the some evidentiary standard required by due process.

4          Nwaonumah counters that *Hill*'s some evidence standard has been replaced with the

5   preponderance standard, as set forth in *Sandin v. Conner*, 515 U.S. 472 (1995), a Supreme

6   Court decision that was issued after *Hill*. (Trav., Dkt. No. 33 at 3.) *Conner* said nothing

7   about *Hill* or the evidentiary standard that should be used in prison disciplinary decisions

8   or by federal habeas courts. "Preponderance" does not appear in the text. Rather, *Conner*

9   discussed when a prison regulation or action creates a liberty interest protected by the Due

10  Process Clause.[1] Nothing in the opinion supports Nwaonumah's contention that *Conner*

11  displaced *Hill* or that it in any way altered the evidentiary standard.

12         The petition will be denied.

13                                   **CONCLUSION**

14         The state court's adjudication of Nwaonumah's claims did not result in decisions

15  that were contrary to, or involved an unreasonable application of, clearly established

16  federal law. Further, the state court's findings did not result in decisions that were based

17  on an unreasonable determination of the facts in light of the evidence presented in the state

18  court proceeding. Accordingly, the petition is DENIED.

19

20         [1] The plaintiff, Conner, a Hawaii state prisoner, was found guilty of violating prison
21  rules and was sentenced to a term of solitary confinement ("disciplinary segregation").
    *Conner*, 515 U.S. at 475. He filed suit on grounds that (i) he had a liberty interest in
22  remaining free from disciplinary segregation; and (ii) the state had not provided him with a
    hearing consonant with the due process protections he was owed (e.g., the opportunity to
23  call witnesses) because of that liberty interest. *Id.* at 476. The Court rejected his claim,
24  noting that not every punitive state action "encroaches upon a liberty interest under the
    Due Process Clause." *Id.* at 484. Only those actions that cause an "atypical and
25  significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at
    484, or necessarily affect the length of an inmate's sentence, create such an interest, *id.* at
26  487. Conner's segregation, the Court held, did not qualify under this standard. *Id.* at 485.
27  It was not "a dramatic departure from the basic conditions" of his sentence, *id.*, nor did it
    "inevitably affect the duration" of his incarceration, *id.* at 487.
28

3

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Nwaonumah may seek a certificate of appealability from the Ninth Circuit.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

**Dated:** May 11, 2018

                                     WILLIAM H. ORRICK
                                     United States District Judge

United States District Court
Northern District of California